UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Civil Action No. 2:18-cv-14293

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| BKF CAPITAL GROUP, INC., | ) |
| Defendant. | ) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Air Force (the "Air Force" or "USAF"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against Defendant BKF Capital Group, Inc. ("BKF") pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a), in connection with the release or threatened release of hazardous substances at Cattle Dipping Vats C and D (Site Nos. OT-59C and OT-59D, respectively) (together, the "Vats" or "Vat Sites") located in Highlands County, Florida, within the Avon Park Air Force Range ("APAFR").

2. The United States seeks judgment against Defendant for costs that the United States incurred to conduct response activities in connection with releases or threatened releases

of hazardous substances into the environment at or from the Vats pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). The United States also seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring that Defendant will be liable for any further response costs that the United States may incur in responding to releases or threatened releases of hazardous substances into the environment at or from the Vats.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction over the subject matter of this action and the parties hereto pursuant to 28 U.S.C. §§ 1331, 1345 and 1367, and 42 U.S.C. §§ 9607(a) and 9613(b).

4.   Venue is proper in this district pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) and (c), because the Vat Sites are located, and the threatened and actual releases of hazardous substances that gave rise to the claims for costs associated with the Vats occurred, within this judicial district.

## DEFENDANT

5.   BKF is a corporation organized and existing under the laws of Delaware and is a "person" as defined by CERCLA Section 101(21), 42 U.S.C. § 9601(21).

6.   BKF was incorporated in Delaware in 1954. Its principal place of business is in Ventura County, California.

## STATUTORY BACKGROUND

7.   CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as response actions. 42 U.S.C. §§ 9604(a), 9601(25).

8.   Section 104 of CERCLA, 42 U.S.C. § 9604, provides that whenever any hazardous substance is released into the environment, or there is a substantial threat of such a

release into the environment, the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of, and provide for remedial action relating to, such hazardous substance. The President's authority under Section 104 has been delegated to the Air Force when "either the release is on or the sole source of the release is from any facility . . . under the [Air Force's] jurisdiction, custody or control . . . ." *See* Exec. Order 12580(e)(1).

9. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in relevant part, provides that:

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

. . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

(A) all costs of removal or remedial action incurred by the United States Government… not inconsistent with the national contingency plan.

10. Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), provides that in any action for recovery of costs under Section 107 of CERCLA, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## GENERAL ALLEGATIONS

A. **History of Vat Usage in Florida**

11. Starting in the 1890s, to prevent the spread of cattle fever, which was spread by cattle ticks and was affecting herds throughout the Southeastern United States, the federal, state and local governments began instituting quarantines and eradication programs, and private cattle ranchers also voluntarily took action to prevent the spread of the disease.

12. In DeSoto/Highlands Counties, the tick eradication program began through private efforts as early as 1916.

13. Cattle tick eradication ramped up in 1923 with the passage of a state act, which created the State Live Stock Sanitation Board and divided Florida into 16 zones, and mandated systematic tick eradication in several regions, including Highlands County. As part of the effort to eradicate cattle fever ticks, affected counties were placed under quarantine, and ranchers in these counties dipped their cattle in an arsenic mixture by walking them through dip vats every two weeks.

14. Throughout the 1920s and 1930s, systematic tick eradication work continued. Highlands County still was under quarantine until as late as 1942, and sporadically thereafter as localized cattle tick infestations periodically reemerged through the 1950s. The Florida cattle tick eradication program was completed in 1961.

15. Until about 1940, arsenic was used as the active ingredient in cattle dip solution. After 1940, other pesticides such as dichlorodiphenyltrichloroethane ("DDT") and other chlorinated hydrocarbons were added to cattle dip solution.

B. **History of the Consolidated Group's Vat Usage**

16. Consolidated Naval Stores Co. (hereafter "CNSC") originally was a lumbering and turpentining company which, together with its subsidiaries including Consolidated Land Co. (hereafter "CLC"),[1] owned and operated hundreds of thousands of acres of timber lands in southern Florida. After the Consolidated Group cleared the timber, it used the lands for large-scale cattle ranching operations.

17. By 1920, the Consolidated Group operated 10 cattle dipping vats on its lands.

---

[1] For purposes of this Complaint, CNSC and CLC hereafter will be referred to as the "Consolidated Group."

4

18. During the 1920s, the Consolidated Group built additional cattle dipping vats to continue the cattle tick eradication efforts.

C. **Environmental Response Actions**

19. Environmental response actions for the Vat Sites began in May 1995 pursuant to the Air Force Installation Restoration Program ("IRP"), with the initiation of a Preliminary Assessment and Site Investigation ("PA/SI") and installation of monitoring wells and soil borings at each of the Vat Sites.

20. Arsenic was detected in the soil at both Vat Sites at concentrations that exceeded both Residential and Industrial Soil Cleanup Goals.

21. Other metals also were detected at concentrations exceeding groundwater Maximum Contaminant Levels ("MCLs") or guidance concentrations at both Vat Sites.

22. Pesticides including $\beta$-BHC, 4,4'-DDE, 4,4-DDD, 4,4'-DDT, and toxaphene were detected in vat sediment, soil, and/or groundwater at concentrations exceeding groundwater MCLs or guidance concentrations at Cattle Dip Vat D (Site No. OT-59D) (hereafter "Vat D" or "Vat Site D").

23. The USAF conducted Remedial Investigation and Feasibility Studies ("RI/FS's") for each of the Vat Sites to identify chemicals of concern and remedial alternatives to address the contamination. The RI/FS's were finished in 2005 and 2006.

24. The USAF completed Remedial Designs ("RDs") for each of the Vat Sites in 2007, detailing the designs of the remedial alternatives recommended in each of the RI/FS's.

25. The USAF completed interim removal actions at each of the Vat Sites in 2010 to remove vat water and sediment and excavate and dispose arsenic-contaminated soil, and to demolish and remove Vat D along with the contaminated soil.

26.     On April 20, 2012, the USAF issued a Statement of Basis ("SOB") for the Vat Sites, as well as one other vat site, which identified and explained the selected remedy for the each of the vat sites.

27.     The selected remedy is monitored natural attenuation until the concentrations of the contaminants reach targeted cleanup levels.

28.     Since 2012, the USAF has been monitoring, and will continue to monitor, the Vat Sites to determine the effectiveness of the natural attenuation.

D.    **BKF Corporate History**

29.     CNSC was incorporated in Florida on November 3, 1902.

30.     CNSC was the parent company of its wholly-owned subsidiary CLC, beginning in 1903.

31.     CLC merged with and into CNSC in 1931.

32.     By operation of law, CNSC assumed CLC's liabilities. Fla. Comp. Gen. §§ 6562-6563 (1927).

33.     On March 23, 1961, CNSC changed its name to Consolidated Financial Corp. ("CFC") and became a closed-end investment company.

34.     Beginning on March 23, 1961, controlling shares of CFC were held by Baker, Fentress & Co. (hereafter "Baker Fentress") management and shareholders.

35.     On March 31, 1971, CFC merged with and into Baker Fentress. Pursuant to the merger, Baker Fentress acquired all of CFC's debts and liabilities.

36.     On April 18, 2000, Baker Fentress changed its name to BKF Capital Group, Inc. ("BKF").

37.     BKF is the successor in interest to the liabilities of CNSC, CLC, and CFC.

E.  **Site Ownership History**

   *1.  Cattle Dip Vat C (Kissimmee River Vat) Site Ownership History*

38.  Cattle Dip Vat C a/k/a the Kissimmee River Vat (Site No. OT-59C) (hereafter "Vat C" or "Vat Site C") is located in Township 33 South, Range 32 East, Section 17, in Highlands County, Florida[2] (hereafter "Section 17").

39.  On August 1, 1903, CLC acquired Section 17.

40.  On November 13, 1925, CLC sold Section 17, along with several other areas, to the Polk-Highlands Counties Land Co.

41.  On June 8, 1927, CLC re-purchased Section 17 at public auction.

42.  On December 31, 1931, CLC transferred Section 17 to CNSC.

43.  Vat C was constructed within the bounds of Section 17 at some time prior to 1942.

44.  CNSC continued to own the land until August 6, 1942, when it was transferred to the United States pursuant to a Judgment on Declaration of Taking ("Taking Judgment").

   *2.  Cattle Dip Vat D (Charlie Range Vat) Site Ownership History*

45.  Vat Site D a/k/a the Charlie Range Vat (Site No. OT-59D) is located in Township 33 South, Range 31 East, on the border of Sections 14 and 23, in Highlands County, Florida.[3] (hereafter "Section 14" and "Section 23," respectively).

46.  On August 1, 1903, CLC acquired Section 23.

47.  On February 18, 1911, CLC acquired title to Section 14.

---

[2] This area was originally part of DeSoto County, Florida. In 1921, DeSoto County was subdivided, and Highlands County, along with Charlotte, Glades and Hardee Counties, were carved out.

[3] This area was originally part of DeSoto County, Florida.

7

48. On November 13, 1925, CLC sold Sections 14 and 23, along with several other areas, to the Polk-Highlands Counties Land Co.

49. On June 8, 1927, CLC re-purchased Sections 14 and 23 at public auction.

50. On December 31, 1931, CLC transferred Sections 14 and 23 to CNSC.

51. Vat D was constructed within the bounds of Sections 14 and 23 at some time prior to 1940.

52. CNSC continued to own the land until August 6, 1942, when it was transferred to the United States pursuant to the Taking Judgment.

## SPECIFIC ALLEGATIONS

53. Arsenic, β-BHC, 4,4'-DDE, 4,4'-DDD, 4,4'-DDT, and toxaphene are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), because they are listed at 40 C.F.R. § 302.4 pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602.

54. Arsenic has come to be located at Vat C.

55. Arsenic, β-BHC, 4,4'-DDE, 4,4'-DDD, 4,4'-DDT, and toxaphene have come to be located at Vat D.

56. Each of the Vats is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9) because each Vat is a structure or pit and each Vat is a site or area where hazardous substances have been "deposited, stored, disposed of, or placed, or otherwise come to be located."

57. There was a "release" or a threatened "release" of hazardous substances into the "environment" at or from each of the Vats, within the meaning of Sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and 9601(22), because the hazardous substances described in paragraphs 53 through 55 have been detected in the soil and groundwater at the Vat Sites.

58. During operation of Vat C, hazardous substances including arsenic were spilled and/or leaked and thus "disposed" at Vat Site C, within the meaning of CERCLA Section 101(29), 42 U.S.C. § 9601(29), and 42 U.S.C. § 6903(3).

59. At least one predecessor to BKF owned Vat Site C at the time of disposal of hazardous substances.

60. At least one predecessor to BKF operated Vat Site C at the time of disposal of hazardous substances.

61. During operation of Vat D, hazardous substances including arsenic, β-BHC, 4,4'-DDE, 4,4'-DDD, 4,4'-DDT, and toxaphene were spilled and/or leaked and thus "disposed" at Vat Site D, within the meaning of CERCLA Section 101(29), 42 U.S.C. § 9601(29), and 42 U.S.C. § 6903(3)..

62. At least one predecessor to BKF owned Vat Site D at the time of disposal of hazardous substances.

63. At least one predecessor to BKF operated Vat Site D at the time of disposal of hazardous substances.

64. In undertaking response actions to address the release and threatened release of hazardous substances at each of the Vat Sites, the Air Force has incurred "response" costs as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

65. As of May 16, 2017, the Air Force has incurred unreimbursed costs of approximately $1,494,814 for Vat Site C.

66. As of May 16, 2017, the Air Force has incurred unreimbursed costs of approximately $1,776,138 for Vat Site D.

67. In undertaking response actions to address the release and threatened release of hazardous substances at each of the Vat Sites, the Air Force will continue to incur "response" costs as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

68. The Air Force's response actions taken at or in connection with each of the Vat Sites and the costs incurred incident thereto were not inconsistent with the National Contingency Plan.

### FIRST CLAIM FOR RELIEF
### (Recovery of Response Costs at Vat Site C)

69. The allegations contained in paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

70. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), Defendant is liable to the United States for all costs incurred by the United States in connection with Vat Site C (Site Number OT-59C).

71. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), a declaratory judgment on liability should be entered against Defendant that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with Vat Site C.

### SECOND CLAIM FOR RELIEF
### (Recovery of Response Costs at Vat Site D)

72. The allegations contained in paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

73. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), Defendant is liable to the United States for all costs incurred by the United States in connection with Vat Site D (Site Number OT-59D).

74. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), a declaratory judgment on liability should be entered against Defendant that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with Vat Site D.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America respectfully requests that this Court:

A. Enter judgment in favor of the United States and against Defendant BKF for all costs incurred by the United States in connection with Vat Site C (Site No. OT-59C) through the date of judgment, plus interest, pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607;

B. Enter a declaratory judgment in favor of the United States and against Defendant BKF pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that will be binding on any subsequent action or actions to recover further response costs in connection with Vat Site C (Site No. OT-59C);

C. Enter judgment in favor of the United States and against Defendant BKF for all costs incurred by the United States in connection with Vat Site D (Site No. OT-59D) through the date of judgment, plus interest, pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607;

D. Enter a declaratory judgment in favor of the United States and against Defendant BKF pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that will be binding on any subsequent action or actions to recover further response costs in connection with Vat Site D (Site No. OT-59D);

E. Award the United States its costs of this action; and

F. Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ Ellen M. Mahan
ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

/s/ Rachael Amy Kamons
RACHAEL AMY KAMONS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington DC 20044
Telephone: (202) 514-5260 / Facsimile: (202) 616-2427
Email: rachael.kamons@usdoj.gov

BENJAMIN G. GREENBERG
United States Attorney
Southern District of Florida